

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0541-24

### WILLIAM TRAVIS KITCHENS, Appellant

### v.

### THE STATE OF TEXAS

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FIRST COURT OF APPEALS
### HARRIS COUNTY

SCHENCK, P.J., filed a dissenting opinion.

## O P I N I O N

The appellant in this case approached Hipolito "Tommy" Desoto as he left Appellant's auto shop, firing multiple shots into his chest at point blank range. Appellant then leaned over and fired once more into his face, killing him. Desoto was unarmed. During the State's summation, the State's counsel urged jurors to reject Appellant's self-defense argument to the extent it rested on the notion the

victim was Hispanic. Appellant's counsel objected to the suggestion that he (Appellant's counsel) had implied any such argument in promoting Appellant's self-defense theory. The trial court overruled the objection. The majority finds error in the court of appeals upholding the trial court's conclusion that the prosecutor's "comment was a reasonable deduction from the evidence" and "a reasonable response to defense counsel['s]" perceived effort to inject the victim's race into the jury's deliberations. Maj. Op. at 43.

While I concur in the majority's opinion that race-based statements which may violate a defendant's Due Process rights are inappropriate at trial, I dissent from the assertion that the trial judge in this case acted beyond the bounds of discretion necessarily afforded to her to make the determination whether the race of the victim is at issue or has been put in issue by the defense, deliberately or otherwise.

## BACKGROUND

As the majority notes, during the trial's closing argument, the prosecution alleged Appellant's defense counsel made statements throughout trial inferring the victim was "scary because he was a Hispanic guy." Maj. Op. at 17. At this comment, defense counsel objected, and argued during a bench conference that injecting this race-based comment into trial violated the Fifth and Eighth Amendments. The prosecutor argued his statement simply referred to the victim's appearance, and the judge overruled defense counsel's objection. The State in its briefing points out the

Defense had implied the victim had been affiliated with the "Banditos" motorcycle club and the jury had seen (repeatedly) the videotape of the event clearly depicting the parties involved, including their ethnicity, various references to the decedent as "Hipolito" rather than the name he went by (Tommy), or suggestions during defense summation that he was an "outlaw biker" (in possible violation of an earlier in limine ruling) and had come someplace "he wasn't supposed to be."

I accept the argument from Appellant's counsel that he did not intend to inject any suggestion to the jury that the decedent's race was just cause for Appellant's decision to shoot him multiple times or to deliver a coup de grace into his face. As I detail below, however, I don't believe that is the question. Rather, the question is whether the trial court abused its discretion or otherwise committed an error sufficient to warrant a remand and possible further trial.

## I. THE ABUSE OF DISCRETION STANDARD GOVERNS HERE AND REQUIRES ACTUAL "ABUSE"

This is a court of last resort. Since 1981, we have had the benefit of assistance from our colleagues in the intermediate courts of appeals in resolving routine arguments of trial error like the one involved here. For many good reasons, neither those courts nor this one will entertain interlocutory appeals or mandamus review of the countless decisions trial judges will make as a case moves toward a verdict, judgment, and an appeal. The natural and inevitable product of this system is our

reliance on the good offices of the trial judge and a mature acceptance of the fact that appellate courts cannot function as an instant replay booth or remand or retry every case where appellate judges imagine that they might have done things differently. I believe the court of appeals in this case appreciated this and properly deferred to the trial judge's assessment of the issue before her. I believe we have not, and I write separately to share my understanding of what the standard should tell us regarding our role here.

We have described the abuse of discretion standard much as one might describe a color to a blind man, largely because it defies reduction to words. We have said, for instance, that a trial court abuses its discretion when its decision is "outside the zone of reasonable disagreement." *See Montgomery v. State*, 810 S.W.2d 372, 391(Tex. Crim. App. 1990); *Apolinar v. State*, 155 S.W.3d 184, 186 (Tex. Crim. App. 2005). I agree with that statement, but it hardly captures the practical reality of the respective roles (and skills) of the trial and appellate judges. We went on in *Montgomery* to describe "the zone of reasonable disagreement." First, that zone is breached when "the appellate court can say with confidence *that by no reasonable perception of common experience*" could a judge make a certain ruling. *Montgomery*, 810 S.W.2d at 391. So, the zone of "reason" as demarcated on the trial court's map is essentially what we will later say is "clear."

This Court has applied the abuse of discretion standard to find, among other scenarios, a judge's actions out of line in situations such as misapplication of criteria to determine bail reduction,[1] admitting a shotgun with no relevance to the case into evidence,[2] and refusal to admit qualified expert testimony on the basis of the judge's belief the expert was unqualified.[3] I believe that these and other like manifestations of the "abuse" of discretion standard reflect the reality of our remoteness to the trial and the trial judge's superior perspective over the issue and the protagonists.

The context is obviously critical. The trial judge's duty to oversee the docket surely put most scheduling decisions wholly beyond the reach of appellate review. And yet, a trial judge allotting fifteen minutes to defense counsel to present his mitigation case in a capital murder sentencing proceeding would almost certainly be held to have abused his discretion. Likewise, where a defendant has been represented by the same counsel throughout the case, a trial judge's refusal to continue a first trial setting where counsel is pregnant and set to deliver during the trial dates would likewise abuse his discretion. The former decision effects rights so

---

[1]      *Ex parte Dixon*, No. PD-0398-15, 2015 WL 5453313, at *3 (Tex. Crim. App. Sept. 16, 2015) (not designated for publication).

[2]      *Cunningham v. State*, 500 S.W.2d 820, 824 (Tex. Crim. App. 1973).

[3]      *Olsen v. State*, No. AP-76,175, 2012 WL 1438475, at *8 (Tex. Crim. App. Apr. 25, 2012) (not designated for publication).

vital that it begs for scrutiny and correction. The latter so obviously affects the defendant's right to chosen counsel and its absurdity is so plain that the need for correction by mandamus seems obvious. But, apart from these extremes, these decisions are largely for the trial court alone.

Next, and not far behind, are decisions on evidentiary and other trial rulings that must be made on the scene and in real time. While these decisions are all reviewed for abuse of discretion, I suspect our deference decreases in inverse proportion to the extent the issue appears to turn on a legal interpretation of the rules as opposed to an assessment of what facts are in issue or how a case is unfolding before a jury. A ruling on whether a certain out of court statement is offered for truth of the matter asserted is a legal one that should not be capable of changing from case to case. Because the trial judge's discretion does not reach so far as to make his own law,[4] we would review such a decision and reverse more readily than we would a decision to allow counsel to pose questions on rebuttal examination which may or may not be considered "leading," or to introduce evidence on a topic that would be out-of-bounds unless the other side first "opened the door" to the issue on direct. *E.g., Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998)

---

[4] *Cayton v. Moore*, 224 S.W.3d 440, 445 (Tex. App.—Dallas 2007, no pet.)*;see also In re City of Lubbock*, 666 S.W.3d 546, 566 (Tex. Crim. App. 2023) (Keller, J., concurring) ("A clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion, and may result in appellate reversal by extraordinary writ.").

("[O]verruling an objection to evidence will not result in reversal when other such evidence was received without objection."). Decisions about what topics are potentially in play throughout a trial—explicitly or otherwise—are not amenable to a cold record or the skills an appellate judge brings. The decision whether and how to overrule an objection to a potentially leading question on cross examination is almost entirely a matter of judgment best exercised by the judge who is in the room, familiar with the lawyers and personally observing the jurors as they react to testimony and argument alike.

Appellant, sensitive to the standard that would (and in my view should) counsel deference to the trial court's decision, urges us to draw a "bright line" declaring references to race (or at least overt ones) invariably out of bounds. This would make life simpler for us, of course, as we would treat the introduction of the topic much as we would a ruling on the hearsay standard. The majority wisely rejects—or ignores—that invitation, as race relations and motivations related to them play out daily in the world and our courts will be forced to deal with them whether we like it or not. This is especially true in criminal trial settings where issues of motive may not only be central to the events, at least in the minds of the jurors, but may be presented directly to the jurors for them to answer in their verdict. TEX. CODE CRIM. PROC. ANN. art. 42.014 (listing offenses subject to enhance sentencing where victim was selected because of race or other listed immutable

characteristic).[5] We should not be surprised—or clutch our collective pearls—when issues of race, racial animus or, as here, potential racial anxieties might play out. Criminal trials invariably reflect the world as we wish it was not, including aberrant behavior of all kinds and resulting criminal acts, and sensitive issues such as race and gender.

The problem here then is not that questions of race or the prospect of racism arose in a criminal trial, it is that it came up in this one. Whether it was proper—or more specifically whether the trial judge abused her discretion in perceiving that it might have been—is the only question. Barring obvious error by the trial judge or structural error, which I find lacking here, I would defer to the judge's decision.

## II. THE TRIAL COURT'S DECISION DID NOT AMOUNT TO AN ABUSE OF DISCRETION

The State's counsel here, having observed reference to the victim's potential affiliation with the "Banditos" motorcycle club, heard his full name—Hipolito "Tommy" Desoto—repeated for the jurors, and observed the videotape depicting

---

[5] Following the murder of James Byrd, Jr., state legislators codified the James Byrd, Jr. Hate Crimes Act in Section 12.47 of the Texas Penal Code, providing for enhancement of punishment when findings provide a crime was based on immutable characteristics as described above. This legislation was intended to specifically address crimes such as the horrific 1998 murder of James Byrd, Jr., an African American man who was beaten and dragged to death by three white men with connections to white supremacy groups in Jasper, Texas. In these and like situations, state law specifically provides for where and how race *should* come into play at trial.

him, urged the jurors not to accept Appellant's self-defense theory to the extent it relied on the notion that the victim was "scary because he was a Hispanic guy."

While I would agree with the majority that perhaps I would have ruled differently than Appellant's trial judge or, more likely, may have added an instruction or admonishment to the jury on the issue, I've had six months to think about the issues involved in this case. Our trial judge had six seconds. But had I or anyone else attempted to direct the jury properly, I suspect the instruction would have sounded quite a bit like the state's own argument—something along the lines of "please don't let race be a factor in your deliberations."

It is notable that neither Appellant's counsel nor the majority challenge the idea put forward by the State here. If, as Appellant's counsel urges us, there was no basis for the prosecution's concern that the jurors were being asked to acquit because the decedent's race made him scary, the admonishment would have been unnecessary in any event. Indeed, it might have been cured with a stipulation and instruction to the effect of the state's argument: that Appellant was not claiming entitlement to act in self-defense on this basis. On the other hand, if the trial judge was within her discretion—and I think she was—in concluding that it was possible that this idea had lurked into the case for any reason, I'd be hard pressed to come up with a better statement of what I hope the state law would be than the one the

prosecution offered—it's not legal to shoot and kill people because you find their ethnicity alarming.

In all events, to *abuse* her discretion in ruling on an objection, the trial judge's selection of "sustain" or "overrule" would have to fall outside the reasonable zone of disagreement as to what may be the proper answer—meaning no reasonable person, viewing the proceedings before them could "overrule" the objection as our judge did. Serving the county courts, she has likely perceived the prosecutor try other cases, and possibly the defense counsel as well, and likely better understands the jury pool and the effects of counsel's arguments and statements in *voir dire*.[6] Likewise, this understanding provides her an advantage in determining whether the prosecutor in Appellant's case intended to call Appellant or his attorney a racist, or rather to refer to arguments of defense counsel, or evidence brought forward in examination of the witnesses. And, beyond all of that, the trial judge was in the room and observing the lawyers, witnesses, and jurors throughout the trial. We were

---

[6] The Supreme Court of the United States would seem to agree, finding "[t]here are compelling institutional considerations militating in favor of appellate deference to the trial judge's evaluation of the significance of possible juror bias. He has seen and heard the jurors during their *voir dire* examination. He is the judge most familiar with the evidence and the background of the case on trial. He has listened to the tone of the argument as it was delivered and has observed the apparent reaction of the jurors. In short, he is far more 'conversant with the factors relevant to the determination' than any reviewing court can possibly be." *Arizona v. Washington*, 434 U.S. 497, 513–14, (1978).

not and, I believe, owe considerably more deference to her on that account of no other.

Here, however, rather than considering whether the judge's selection of "overrule" rather than "sustain" was a choice a reasonable person might make, the majority opinion takes time to walk through the testimony of the prosecution and defense counsel and how it might have come across to others in the courtroom that day, conducting its own analysis of how the trial court *should* have come to the "correct" answer. I fear that this analysis plays the thirteenth juror and forgets the minor detail that the trial judge was, in fact, in the courtroom that day, and viewed the referenced proceedings live and in person, drawing on her experience of previous trials and interactions with the parties when making her decision. To me, it is enough that the trial judge was confronted with the prosecutor's reference to race in asking jurors not to endorse the idea that a victim's race might somehow justify his own death. I would not find the judge's decision to overrule the objection of the Appellant's counsel to lie outside "the zone of reasonable disagreement."

## **CONCLUSION**

Our sister court has held, "[t]he mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred." *Downer v. Aquamarine Operations, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). I

would agree with this sentiment and find that while the comments injecting the victim's race into trial arguments may have been inappropriate, I dissent from the conclusion the court of appeals erred to find no abuse of discretion by the trial judge.

Filed: September 3, 2025

Publish